Arguments not to exceed 15 minutes per side. Mr. Cooper for the appellate. May it please the court, I'm David Cooper of the Nashville Bar. I represent John Roberts and I'd like to reserve two minutes for rebuttal if I may. Your Honor, this is a criminal case where I represent Mr. Roberts. He was indicted for conspiracy to defraud the United States. He was indicted for several counts of mail fraud and also a couple of counts under the Arms Export and Control Act. We tried this case over three days in August of 2017. Mr. Roberts was guilty of all of the counts in the indictment. Just briefly as to the facts and I guess given the government ever benefited out here, the scheme was, according to the government, that there were a number of soldiers at Fort Campbell who were essentially stealing government property, military items, and they were selling those to Mr. Roberts and to a gentleman by the name of Corey Wilson. Mr. Roberts and Mr. Wilson were essentially fencing these items on eBay and that's what of course led to the mail fraud counts. Our defense at trial was simple. Mr. Roberts testified that he did not know that these items were stolen. In dealing with these soldiers from Fort Campbell, he had no knowledge that these items were stolen, but of course the jury rejected that testimony, that argument, and he was found guilty. I have prepared and submitted in my brief approximately ten issues and I don't think with time this morning I'm going to be able to go through all of them, but I want to touch on a few of the ones that I feel or I would submit are extremely important. The first one is kind of the trial issue that I have laid out for the court in this case. The trial issue is this. As we were preparing for trial, we had to submit not only our witness list, but also our exhibit list. I submitted a number of eBay listings. They're in the record. I have a few of them with me here this morning. They're fairly innocuous. They just simply show items of military products sold on eBay. We generated these a few weeks before trial and submitted those as our exhibit list. The government filed a motion in limine basically saying that these eBay listings that we have were not relevant. Were they of the same time period as the alleged crimes? No, they were not, Judge Moore. Unfortunately, we were not able to go back to the time period and bring those postings in. These postings were probably within six weeks of the trial, July and August of 2017. They were the same items. They were the same type of items. There was nothing different about them. Mr. Roberts testified about that at trial. Was he allowed to testify that he thought that the products he was selling were just like eBay products? He was. He did testify to that effect? I thought about that as I was preparing for this argument. We were excluded from using the paper, but he could testify that, yes, I looked on eBay and I saw these items and there was nothing nefarious about them. There was nothing to suggest that they were in any way improper or illegal. I used that for purposes of trying to develop pricing and that type of thing. So he was able to testify about that. The fact that he was able to testify about it pretty well does away with any argument that the exclusion of the evidence was not harmless, doesn't it? Judge Gibbons, I thought about that and it really doesn't because, yes, Mr. Roberts could testify about that and the jury could hear his words, but as you know, it's always good to have some corroboration. I mean, jurors like that. Well, this wouldn't corroborate anything because it's pictures of the time period leading up to the trial, and so it's not corroborative of the fact that he saw it and therefore he acted. So, I mean, that's something a trial judge would consider. Right. It is something a trial judge could consider, but again, this goes to whether or not these items were probative and relevant in this case. I've got a case here. I didn't just found it. It's United States v. Whittington. It's at 455 Fed 3rd, 736, and it says, even if a district court believes that evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth, and I tried to convince Judge Lawson that that was the case. I know that. Judge who? Lawson. He was a visiting judge from Georgia. Okay. Right. Yes, Macon. I thought it was Crenshaw. Okay. He's, in this case, the problem is for your client, I think, that a fair number of other people testified that he knew it was stolen. Certainly. That's true. And text messages bore that out. Right. So, this goes back to the harmlessness of the paper copies of the testimony he gave anyway, right? And the other question is, we would have to find it to be an abuse of discretion. I don't think any of the cooperating witnesses ever testified, yes, we told John Roberts that we had stolen this stuff, and yes, he knew that. The best that they got was it was always assumed. Now, you're right, Judge Cook. There were text messages, and some of them were rather damaging to Mr. Roberts. And he tried to explain in context a lot of those text messages. And that's why, again, I feel like these eBay listings and postings were so crucial to kind of bolster and back him up in what our whole defense was of he didn't have the state of mind to commit these acts. And so, I mean, even the jury instruction said that we could, it says, but the defendant's state of mind can be proved indirectly from the surrounding circumstances, including what the defendant said, what the defendant did, etc. Well, that's what the government used. They used the text message and what the cooperator said. But we needed this information for our defense. I mean, I thought about walking up here with one hand tied behind my back, but I thought that might be a little bit too melodramatic. But that's how I felt at trial, trying to defend this man, when all I could use, Judge Gibbons, was his words. That was it. I mean, he could testify about that, but I'm sorry, a lot of times that just rings hollow with many jurors. They're wondering, you know, where's the beef? You know, where's the evidence to support that? So that's what we didn't have. So that's the trial issue. With the approximate six minutes I have left, I want to talk about some of the sentencing issues. One of the biggest ones that Judge Lawson determined was the amount of loss, because as you all know, these fraud cases are driven by the amount of loss, and this was a big one. Probation initially sought almost $6 million loss. It was derived really from two areas. The government used the value of the property that was seized from Wilson and Mr. Roberts' warehouse, and then added to that the value of these eBay listings. So you've got $1.4 million in value from the warehouse, and then you've got $4.1 million in value from eBay. So you add those together. Now, when you say the value from eBay, is that the value that the products were sold on eBay? So why isn't the talent just tallying up the number of dollars involved in the sales sufficient, and you just told us it was $4.1 million? Because the government never could prove what was legal and what was illegal that Mr. Roberts was selling on eBay. They admitted that a lot of, or some of the things Mr. Roberts sold on eBay was legal. Mr. Jaworski will admit that when he gets up here. The problem- Wasn't there a witness who said at sentencing that 90% of the products on eBay were illegal? No. That's Agent Perry, and she and Judge Lawson sort of got into a really bad version of the price is right, because what she said was, it's well beyond 50%. It's the majority of the items were stolen. And Judge Lawson says, well, what does that mean? Does that mean 50%? She says, higher. He says, that means 60% higher, to where they get up to this 80 to 90%. But if you use Agent Perry's words of, it was well above or beyond 50% or the majority of the items, well then use 60%. And if you use 60% on this $1.4 million and this $4.1 million, and you do the math, then all of a sudden, guess what? It's under $3.5 million, which takes it below that 18 level, down to a 16 level. Doesn't sound like a lot, but when you're calculating these guidelines, it's very important. So what relief would you want with respect to this amount of loss issue? Send it back. Allow us to use $2,500 that I wanted to use from the CJA funds to be able to hire a forensic accountant to come in and help me look at some of these things and crunch some numbers to be able to defend this man on this amount of loss. How would a forensic accountant help you? And how did you, when you were asking for the forensic accountant, how did you explain it to the judge? I explained it just like I explained it to you, Judge Moore, that I needed, because I knew after the trial that we were going to get into this. And I immediately asked for that to look at, you know, a lot of these items were used and just almost ragged. And they're using retail price. No, but if it's the eBay ones, they were actually sold for that amount. Right. Well, then we're going to have to get into forcing the government to decide what's legal and what's not illegal. How would a forensic accountant help you with that? More just toward the math, I guess, than anything. It would be more really for the forensic accountant just to help clarify these numbers. Because, again, this was stacks and reams of documents as to eBay listings and postings and the amounts. He wouldn't be able to tell what is lawfully sold and unlawfully sold, I think. Probably not. I think that, again, is going to be incumbent upon the government to do that. So the government had the items, had the photographic evidence of the items from eBay? Yes, ma'am. And they also had the photographs of the items from the warehouse. Strangely enough, Agent Perry testified she didn't know what was Corey Wilson's and what was John Roberts', because when they pull the stuff out of the warehouse, they just start mixing it up. So they don't have a clue who's his property and who's Roberts'. Now, you could say, well, it's a conspiracy and it really doesn't matter. But, again, I think for this purpose, it does. Why does the amount of loss calculation depend on whose property it was? Well, I think the law is that you want to try to determine foreseeability and whose property it is, as opposed to just casting a wide net and bringing it all in. Even if it's a conspiracy? Even if it's a conspiracy. So is there a case that you would say would help you in that regard? Your Honor, I'm standing here on my feet. I thought we cited one in our brief. I can't quote you verse and chapter right now. Well, I mean, if they're in a conspiracy together and they're aware, each is aware that the other is involved and has certain property, whether it's more attributable to one or the other, it's not going to be foreseeable to your client that Mr. Wilson has this property and he's going to be selling it illegally. So, I mean, that's another issue that any error is almost certain to be harmless, it seems to me. Well, perhaps, Judge Givens. But, again, Corey Wilson testified. He had his own business going on. I mean, he just rented space to Mr. Roberts. I mean, they weren't joined at the hips, necessarily. I did want to talk about one other thing on the sentencing was obstruction of justice. And if I could, I could just add another minute to my argument here and just take a minute on rebuttal, because I did want to complete this thought. Mr. Roberts was given a two-level enhancement for obstruction of justice, and it was essentially because he testified at trial, as I've said, as I've told the court about. The government said in sentencing, we're not seeking obstruction because he got up there and lied, or, wait a minute, we're seeking obstruction because he got up there and lied based on the jury verdict. That's what the government said. The government also said, I think you can make that inference based on the text messages and the testimony of the cooperators. And then Judge Lawson said, I just simply make the finding that the defendant testified falsely. As I stand here right now, I don't have a clue as to where Mr. Roberts is supposed to have lied, other than the fact that he just simply got up there in his own defense and testified, I did not have any knowledge that this property was stolen. And respectfully, Your Honors, I don't think that gets it, as far as obstruction. The government, for this enhancement, essentially has to prove perjury, and you've got to have specific findings about that, and this record is totally void from the sentencing hearing to support that obstruction charge. And it says stop, and I shall stop. Thank you very much. Good morning, Your Honors. May it please the Court. My name is Thomas Jaworski. I'm an Assistant United States Attorney from the Middle District of Tennessee, and I represent the United States. I ask that you affirm the District Court's judgment, because the District Court got it right. It got it right . . . Well, whether the District Court got it right or wrong, it looks to me, at least, from the sentencing, like the District Court, who was from Georgia, had no idea what the Sixth Circuit requirements were with respect to supporting the sentence he imposed, at least in terms of the obstruction of justice enhancement. Did you represent the United States in the trial court? I did, Your Honor. Do you think it might have been a good idea for you to have said, Your Honor, in the Sixth Circuit, you're required to do X. I would respectfully ask that the Court do X. Your Honor, I did ask the judge to make a finding that Mr. Roberts committed perjury. He made that finding. But he didn't make a specific finding the way we require under the Supreme Court's Dunnigan case. His finding was based on, after I made arguments about the concealment of the scheme . . . I believe it's fair that he adopted those, Your Honor, when he made his ruling in a finding. But don't we require a more specific statement that when the defendant said, this guy is green, he was lying? We don't know what specifically this defendant said that was perjury. Your Honor, everything you said was perjurous on the stand. He testified contrary to his text messages. Well, we don't have any license. We shouldn't take . . . we should not take the liberty of disregarding our own precedent. Your Honor, I would argue that the judge made a credibility finding, and those findings are basically unassailable. And how are we to know that? Are we to divine what he did? I mean, why do we have the rules that are very specific on this point if we don't intend to apply them? I mean, this is a judge who wandered in from Georgia and who did not familiarize . . . in my opinion, and who did not familiarize himself with the Sixth Circuit precedent with respect to the requirements for sentencing a criminal defendant. I would think . . . I'm not meaning to fuss at you, but I would think the government might have felt it within its own interest to have brought some things to his attention. I respect that, Your Honor. There were a couple times where I personally said, Your Honor, will you please make a specific finding on sophisticated means, on obstruction. We took those steps knowing that he was a visiting judge, and we believe that he did comply with the Sixth Circuit's requirements. So, amount of loss is also a real troubling thing in terms of the sentence. With this witness Perry and her meandering about what percent of the sales were legal or illegal, why shouldn't we remand for a careful determination of what the amount of loss is? Your Honor, exact precision is not required by the circuit. What's required is a reasonable estimate. She made a reasonable estimate because she was the case agent involved and she examined these records. There's no dispute that $4.1 million were sold in eBay property. Agent Perry examined those listings. She and other agents, Agent Perry and others, found the $1.4 million. No, listings are one thing. Purchases are another on eBay. Do we know that people bought at those prices? Those were sale prices, Your Honor. I see. Fair market value. Let's just focus on that. $4.1 million was sold on eBay, but we have the question that some of the sales were sales of legal products and some were sales of illegal products. And so how does Perry's testimony give us confidence that a certain dollar amount or percentage amount was illegal products? Because I thought she was sort of jumping around saying, well, more than half and then your opponent is saying that she could have been just 60% but somehow or other the district judge comes up with 90%. What's the basis? 5 to 10% were legitimate products. And if you recall, Your Honor, from the trial testimony, Agent Perry is the one who discovered this scheme on eBay in the first place, is familiar with military property, knows what was stolen from Fort Campbell and what was contemporaneously sold onto eBay. So we believe that her testimony was credible. While the judge did push her a little bit, exact precision is not required. So what does she say of the $4.1 million sold on eBay is the amount that should be included in the loss amount? She's testified to 90 to 95%. And if I may, Your Honors, you have the authority on de novo review for the judge's methodology. I will concede that he was incorrect on the math in Mr. Rock's favor. What did he find? He found 90% should be 3.6 for the eBay, but he found it as 3.1. So that error went in favor of Mr. Roberts. So it should have been 3.6 million in stolen property sold on eBay. And the total amount of, I'm sorry my voice is going, but the total amount of loss has to be more than 3.5 million in order to justify this particular enhancement. Correct. So even if you don't count the inventory prepared by the 101st Airborne, who's familiar with military property, who found property in Mr. Roberts' warehouse, his house, his vehicles, which had military serial numbers on them. Even if you don't count that, we're still over the $3.5 million threshold. If you use the 3.6. Correct. Which is the 90% of the 4.1. Correct. And even if you use the 3.1, Your Honor, it's logical that it wouldn't take much to get over to the 3.5 threshold from the Army inventory list. It would be $400,000, and the military property list was 1.4 million. So was there any testimony about what the value, whatever the value should be, was of that military property in the warehouse? Because this is where his depreciation issue comes in, right? Right. His methodology was 80% of 1.4 million, which was 1.1 million. When you say his, who's he? The judge? The judge, Your Honor. 80% of 4.1. And where did he get the, sorry, 80% of 1.4? Right. Where did the district judge get the 80% number from? Agent Perry testified to it. That's Exhibit 1 from the sentencing transcript, which is in the record, and the court can make their own determination, but I believe that Agent Perry testified to that 80%. If you see the serial numbers in there, almost all of those items have military serial numbers, which means they cannot be outside DOD channels. And so one of the arguments of your opponent is somehow that a forensic accountant should help with depreciation or determining value. The district judge refused to allow a forensic accountant. On the surface, it would seem that if you're trying to figure out amount of loss, that the district judge should have allowed a forensic accountant. How do you respond to that? Maybe so, Your Honor, but it was not an abuse of discretion. The forensic accountant couldn't do anything with the prices of the items sold on eBay. Those are what they are, $4.1 million. The fair market value of your house is what anyone is willing to pay for it. It's the items piled and added up by the 101st Airborne, their supply unit at Fort Campbell, who has familiarity with these items. This forensic accountant, the best he could do is come in and add it up. He wouldn't be able to testify, as Judge Cook noted, as to whether something was actually stolen from the military. That's something in the purview of Agent Perry, the 101st Airborne, and the other officers who examined the inventory. Could a forensic accountant, though, say that these items that are in the warehouse are old Jeeps, and old tires, and old whatever? He could, but then we'd fall back on harmless error, because we're still over the threshold ... As long as it's at least $400,000. Without $1 from the inventory, had the judge used the correct methodology of 90%. Okay, so the big question at the trial, as presented by your opponent, is the question about the eBay listings. The concurrent eBay listings are the listings within six weeks of the trial. Wouldn't that support the defense of the defendant here that he didn't know that these items were inappropriate to be selling? If we didn't have his text messages showing his state of mind, if we didn't have cooperator testimony that everyone knew, then perhaps there's an argument there. But we didn't just rely on the eBay listings. Why do you keep a defendant from trying to show he was innocent by his best available evidence when there's a lot of evidence against him? I mean, this would seem to be the kind of situation where a defendant would especially want to be able to come up with some shred of evidence to show that he innocently believed that these were perfectly fine things to sell. Your Honor, I'll quote what Judge Lawson said at the bench conference on the record. This is a speeding ticket defense. It doesn't matter that other people may have been selling military equipment. This has nothing to do with the price of eggs, was his exact statement. But the defendant's point is that because other people were selling on eBay, the defendant thought that what he was doing was legal. So you're saying that if everybody's speeding on a road, you can't think that it's okay to speed? I understand your point, Your Honor, but if I may quote something from the record that happened, the defendant received a text from a soldier talking about the helmets and vests he'd just stolen. Quote, that's why I'm taking risks for this blank, because it could be any day. Because where I got that blank was crazy risky. Mr. Roberts responded, I can only imagine. I wondered about that. I imagine it was pretty locked up. Mr. Roberts knew this property was stolen. Regardless of whether other people on eBay were selling similar items, had absolutely no bearing on his state of mind, Your Honor. Well, the court thought it could be confusing to the jury. It could be, Your Honor. I think that that seemed to be the argument offered by the court. That's right. That's right, Your Honor. Not that an argument, but rationale. Why would it be confusing to the jury if the government could say, hey, these are concurrent eBay listings from the trial day, and that doesn't tell us what the defendant knew? I think the risk of confusion is substantial, because it could paint the defendant in a light that's just not true. That this was a year and a half after the fact from the time the defendant stopped selling military gear for a three-year period, text after text after text. Our point was that he knew, and it didn't matter. If we were just relying on eBay listings back in 13, 14 ... I think it's like this argument is sort of, well, we had a lot of proof, therefore, any shred of evidence that might have established something to the contrary should not be admitted. It doesn't establish ... I don't think that's exactly ... That's not the way to articulate the argument, I don't think, on the government's behalf. Regardless, Your Honor, we'd argue it was a harmless error at best, considering all the other evidence. Your Honor, if there's nothing else, for all these reasons, we ask that you affirm the district court judgment, because the district court got it right. Thank you. Your Honors, I don't have a whole lot to add. I was just looking at the trial transcript while I was sitting over there listening to Mr. Jaworski. We came up, or Judge Lawson came up with this 90%, I think based on some testimony at 2136 is the page ID number, where he asked Agent Perry, could you give the court a percentage as to just a conservative estimate of how many items appeared to have been stolen from the military? That's where she said, I would say 90 to 95%. Again, without any evidence, where she had gone in and highlighted this information, and that's where Judge Lawson tagged on the 90% for purposes of the eBay list. But did you have a chance to question her and challenge her on that? Oh, I did. I did challenge her on it to the point to where she did not know specifically the items that were stolen, as opposed to that were illegal, that type of thing. So yes, Your Honor, I did. Thank you. And I understand that you've been representing your client pursuant to the Criminal Justice Act, and we thank you for your service to your client and to the justice system. Thank you both for your argument. The case will be submitted.